**A., Plaintiff,**

v.

**The NEW YORK BOARD OF ELECTIONS, Defendant.**

**No. CV00–2748.**

United States District Court, E.D. New York.

May 25, 2000.

A., Brooklyn, NY, pro se.

Paul F. Marks, Corp. Counsel of City of New York, New York city, for N.Y. Board of Elections.

*MEMORANDUM & ORDER*

WEINSTEIN, Senior District Judge.

Plaintiff, pro se, seeks injunctive relief alleging that Section 6–138(4) of New York's Election Law violates both the American's with Disabilities Act (ADA), *see* 42 U.S.C. § 12101 et seq., and the Fourteenth Amendment, *see* U.S. Const. amend. XIV. The New York Board of Elections has moved for dismissal.

For the reasons below, the case is dismissed.

## I FACTS

The facts alleged by plaintiff are assumed true. All reasonable inferences from those facts are drawn in plaintiff's favor. *See, e.g., Gordon v. Griffith,* 88 F.Supp.2d 38, 40 (E.D.N.Y.2000).

Plaintiff is interested in conducting an independent candidacy for the 48th New York City Council District. *See* Compl. ¶ 7; *see also* Appendix A. Under New York's Election Law, an independent candidate must file a nominating petition containing the valid signatures of either 5% of the total number of votes cast for governor in the last gubernatorial election in the council district, or 2,700 signatures, whichever is less. *See* N.Y.Elec.L. § 6–142(2) ("An independent nominating petition for the nomination of candidates for an office [which is not a state-wide position] ... must be signed by voters numbering five centum of the total number of votes case for governor at the last gubernatorial election in such unit. . . ."). In order to appear on the ballot for the November 2001 election, plaintiff must therefore collect 1,460 valid signatures, which represents 5% of the 29,190 votes cast in the last gubernatorial election in the 48th council district. *See* Def's Mem. of Law in Opp. to Plf's Mot. for Prel. Inj. & in Supp. of Mot. to Dismiss. at 2.

Plaintiff has presently filed the necessary papers declaring his candidacy with the Board of Elections and desires to begin collecting the 1,460 signatures needed.

*Id.* at ¶ 8. Section 6–138(4) of New York's election law, however, provides that any signatures collected before July 10, 2001 will not be valid signatures. That provision permits signature collection for only a six week period. For the November 2001 election, it will run from July 10, 2001 until August 21, 2001. Plaintiff contends that this narrow window violates both the ADA and the Fourteenth Amendment.

With respect to the ADA claim, plaintiff contends that he suffers from clinically diagnosed schizophrenia which is now in remission. Schizophrenia is a psychotic disorder characterized by loss of contact with the environment, by noticeable deterioration in the level of functioning in everyday life, and by disintegration of personality expressed as disorder of feeling, thought as in hallucinations and delusions, and conduct. *See, e.g.,* 2 J.E. Schmidt, *Attorneys' Dictionary of Medicine* (1975). Though plaintiff has not suffered a schizophrenic episode for some time, he alleges that should he suffer such an episode during the six week signature collection period his efforts would be adversely affected. To forestall this possibility, plaintiff seeks an injunction permitting him "a year or more to gather petition signatures," rather than the six weeks currently provided. Compl. ¶ 13.

With respect to the Fourteenth Amendment claim, plaintiff argues that—even for a person without a disability—the six week period to obtain 1,460 signatures imposes an undue burden on ballot access in violation of the Federal Constitution.

## II LAW AND APPLICATION

### A. ADA Claim

■ A party seeking an accommodation under the ADA must show that it is *necessary to ameliorate an impairment arising from the alleged disability. See Buckley v. Consolidated Edison Co.,* 155 F.3d 150, 156 (2d Cir.1998) (en banc). The Act does not demand accommodation for impairments not causally related to the alleged disability. *Id.* at 156.

For example, the court of appeals in *Buckley* addressed the issue of whether a recovering drug addict who was required as a condition of employment to undergo periodic drug testing was entitled to an accommodation "extending the time allowed for him to urinate" while undergoing the test. *Id.* at 156. The court reasoned:

There being no suggestion that [plaintiff's] inability to produce a urine sample under time constraints or under supervision was related to his recovering-substance-abuser status, this ... fails to state a claim under the ADA, for what the ADA forbids is discrimination "because of the disability of" the qualified individual and discrimination "on the basis of disability".

*Id.* at 156.

■ Plaintiff's ADA claim suffers from the same defect as those alleged in *Buckley.* He has not identified a rational nexus between his current state of schizophrenia in remission and the need for an extension of time for signature collection in the Summer of 2001. As a result, his ADA claim fails as a matter of law.

### B. Fourteenth Amendment Claim

■ The right to vote in any manner and the right to associate for political purposes through the ballot are not absolute. *Burdick v. Takushi,* 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). As the Supreme Court instructs, "[c]ommon sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections." *See id.*

"Unlimited access to the ballot would inevitably produce confusion, and states may thus limit the number of candidates that appear on the ballot." *LaRouche v. Kezer,* 990 F.2d 36, 39 (2d Cir.1993). One way states may institute limitations is by "requiring candidates to produce evidence

of public support" through ballot petition requirements. *Id.* at 40.

■ The rigorousness of an inquiry into the constitutionality of petition requirements depends upon the extent to which they burden individuals' rights to vote, to run as a candidate, and to associate with each other for political ends. *See Burdick,* 504 U.S. at 434, 112 S.Ct. 2059. As a practical matter, an election code, whether governing "the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects" these rights. *Id.* at 433, 112 S.Ct. 2059. So long as the petition requirements "impose[ ] only 'reasonable, nondiscriminatory restrictions,'" *id.* at 434, 112 S.Ct. 2059, the state's important interest in restricting ballot access to avoid "confusion, deception, and even frustration of the democratic process" are generally sufficient to justify the restrictions. *LaRouche,* 990 F.2d at 39.

Section 6–138(4)'s limitation on signature gathering to a six week period does not impose a severe burden on plaintiff in gaining access to the ballot. He will have over 42 days to collect the 1,460 signatures. On average, he must only collect 35 signatures per day. Given that the 48th district is only 1.5 miles in width and only 3 miles in length, he can easily canvass it on foot to collect the signatures. *See* Appendix A (map of district) (located on the internet at <*http://www.cmap.nypirg. org/ scrip ts/esrim ... IN & Address= & ZIP= & click.x=248 & click.y=261*> (visited May 25, 2000)).

The Supreme Court and the court of appeals have upheld signature gathering requirements far more burdensome. For instance, in *American Party of Texas v. White,* 415 U.S. 767, 785, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), the Court found that Texas's requirement that candidates gather 22,000 signatures in 55 days, a rate of 400 signatures per day, did not impose an undue burden on access to the ballot. In *Storer v. Brown,* 415 U.S. 724, 740, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), the Court considered a California ballot-access law requiring independent candidates to gather 325,000 signatures in 24 days. The requirement was upheld by the Court which observed that "[s]tanding alone, gathering 325,000 signatures in 24 days would not appear to be an impossible burden. Signatures at the rate of 13,542 per day would be required, but 1,000 canvassers could perform the tasks if each gather 14 signatures a day." *Id.* Similarly, in *LaRouche,* the court of appeals for the Second Circuit upheld a Connecticut statute that required candidates for the Democratic Party presidential primary to collect 6,518 signatures in a two week period, a rate of 466 signatures per day.

Because section 6–138(4)'s requirements do not unduly burden the rights to vote, to run as a candidate, or to assemble and are rationally related to the state's interest in preventing confusion in balloting, they do not violate the Fourteenth Amendment.

## III CONCLUSION

The complaint is dismissed. No costs or disbursements are assessed.

SO ORDERED.

262

■■■■■■■■■■

## APPENDIX A.

Map of the 48th Council District, borough of Brooklyn, New York City